1  MARK S. POSARD  (SBN:  208790)
mposard@grsm.com
2  SCOTT M. MCLEOD  (SBN:  242035)
smcleod@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
3 Park Center Drive, Suite 200
4  Sacramento, CA 95825
Telephone:  (415) 875-3343
5  Facsimile:  (916) 920-4402

6  Attorneys for Defendant
JACK IN THE BOX INC.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  JUDY SZWANEK and JAMES LOPEZ II,          ) CASE NO. 3:20-cv-02953-SI
individually and on behalf of all others similarly )
12  situated,                                  ) **DEFENDANT JACK IN THE BOX**
                                             ) **INC.'S NOTICE OF MOTION AND**
13                          Plaintiffs,        ) **MOTION TO DISMISS (FRCP**
                                             ) **12(b)(6)) AND MEMORANDUM IN**
14       vs.                                   ) **SUPPORT**
                                             )
15  JACK IN THE BOX, INC.,                     ) Date:  October 2, 2020
                                             ) Time: 10:00 a.m.
16                          Defendant.         ) Judge: Susan Illston
                                             ) Crtrm: 1 – 17th Floor
17                                             )
                                             )
18

19

20

21

22

23

24

25

26

27

28

-1-

Defendant's Motion to Dismiss and Memorandum in Support                    3:20-cv-02953-SI

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that on October 2, 2020, at 10:00 a.m., or as soon thereafter as

3  the matter may be heard, in Courtroom 1 – 17th Floor, 450 Golden Gate Avenue, San Francisco,

4  California 94102, before the Honorable Susan Illston, Defendant Jack in the Box Inc.

5  ("Defendant") will and hereby does move the Court for an order dismissing the Complaint and

6  each cause of action therein.

7      Defendant moves for an order dismissing Plaintiff's Complaint as with prejudice for failure

8  to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6).

9      This motion is based upon this Notice of Motion and Motion, the below Memorandum of

10  Points and Authorities, such matters as may be presented in a reply memorandum, the pleadings

11  and papers on file in this matter, and such other matters as the Court may consider.

12  Dated: June 19, 2020                     GORDON REES SCULLY MANSUKHANI, LLP

13

14                              By:    /s/  Mark S. Posard
                                      Mark S. Posard
15                                    Scott M. McLeod
                                      Attorney for Defendant
16                                    JACK IN THE BOX, INC.

17

18

19

20

21

22

23

24

25

26

27

28

-2-

Defendant's Motion to Dismiss and Memorandum in Support                     3:20-cv-02953-SI

1  MARK S. POSARD  (SBN:  208790)
mposard@grsm.com
2  SCOTT M. MCLEOD  (SBN:  242035)
smcleod@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
3 Park Center Drive, Suite 200
4  Sacramento, CA 95825
Telephone:  (415) 875-3343
5  Facsimile:  (916) 920-4402

6  Attorneys for Defendant
JACK IN THE BOX INC.
7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11  JUDY SZWANEK and JAMES LOPEZ II,        ) CASE NO. 3:20-cv-02953-SI
   individually and on behalf of all others similarly  )
12  situated,                               ) **MEMORANDUM IN SUPPORT OF**
                                            ) **MOTION TO DISMISS (FRCP 12(b)(6)**
13                          Plaintiffs,     )
                                            ) Date:  October 2, 2020
14        vs.                               ) Time: 10:00 a.m.
                                            ) Judge: Susan Illston
15  JACK IN THE BOX, INC.,                  ) Crtrm: 1 – 17th Floor
                                            )
16                          Defendant.      )
                                            )

17

18        **STATEMENT OF ISSUES TO BE DECIDED:**

19        Whether Plaintiffs have pled facts sufficient to state a cause of action against Defendant.

20  Specifically, (a) whether the drive-through policy at issue discriminates against Plaintiffs on the

21  basis of disability and (b) whether Plaintiffs have pled *facts* showing that the corporate Defendant

22  had requisite control over the allegedly discriminatory policy.

23                    **I.    INTRODUCTION**

24        Plaintiffs' Complaint alleging discrimination on the basis of disability must be dismissed

25  without leave to amend. Plaintiffs allege that they visited two Jack in the Box-branded restaurants,

26  and, because they are visually impaired, could not obtain service through the drive-through. They

27  allege that Jack in the Box-branded restaurants offer service only through drive-through late at

28  night, and they prohibit persons who are not in a vehicle – including but not limited to visually

-3-

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

1  impaired persons – to use the drive-through. These allegations, even if true, are insufficient to state

2  a claim against corporate Defendant Jack in the Box Inc. ("Jack in the Box").

3      First, as framed by Plaintiffs, the allegedly discriminatory practice – not allowing

4  pedestrians to use the drive-through – does not discriminate against persons "on the basis of

5  disability." At most, it "discriminates" against people who do not themselves drive or otherwise

6  have access to a car, e.g. as a passenger. Driving is not a major life activity. Even if it were,

7  Plaintiffs also do not allege that they would be able to use the drive-through if they were not

8  visually impaired. That is, they do not allege that if they were not visually impaired, they would

9  have the ability and means to drive.

10      Second, Plaintiffs do not allege facts sufficient to show that the corporate Defendant had

11  "specific control" over the allegedly discriminatory drive-through policy. To the contrary,

12  Plaintiffs allege that Defendant has *no policy* regarding service of customers when the drive-

13  through is the only option for service.

14      Plaintiffs' derivative claims for violation of the Unruh Civil Rights Act and for Declaratory

15  Relief fail for the same reasons.

16      Defendant requests that the Complaint and each cause of action be dismissed without leave

17  to amend.

18  **II.      FACTS**

19  **A.      Plaintiff's Allegations**

20      Plaintiffs assert that "thousands" of Jack in the Box-branded restaurants close their lobbies

21  but remain open late at night exclusively via their drive-through windows. (Complaint, Dkt # 1 at

22  ¶¶ 2, 31.) They allege these restaurants prohibit all pedestrians from ordering food at the drive-

23  throughs. (Id. at ¶¶ 32-33.) They assert that this practice discriminates against the visually

24  impaired, "who are unable to drive or walk up to the drive-thru window" during "late-night" hours.

25  (Id. at ¶¶ 36.)

26      Plaintiffs also allege in a conclusory fashion that Jack in the Box "owns, operates, and

27  leases" unspecified restaurants in California and the United States. (Id. at ¶¶ 8, 12, 13.) They do

28  not allege that they visited a restaurant owned or leased by Defendant. They assert that Jack in the

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

-4-

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

1   Box "operates" all Jack in the Box-branded restaurants by "implementing, maintaining, and

2   enforcing" something Plaintiffs call "the Jack in the Box System" (Id. at ¶ 17.)

3          Plaintiff Szwanek alleges that her "eyesight has been compromised" and that she was

4   unable to obtain "access" to a Jack in the Box restaurant located at 4080 San Pablo Dam Road in

5   El Sobrante, California because she cannot drive. (Dkt # 1, ¶¶ 10, 39.) Plaintiff Lopez alleges that

6   his "eyesight has been compromised" and that he was unable to obtain "access" to a Jack in the

7   Box restaurant located at 869 West Washington Boulevard in Montebello, California because he

8   cannot drive. (Dkt #1, ¶¶ 11, 51.) Each allege they were unable to obtain access because the lobbies

9   were closed, and they were unable to use the drive through.

10          Based on these bare allegations, Plaintiffs assert three causes of action: (1) Violation of the

11   Americans with Disability Act; (2) violation of the Unruh Civil Rights Act; and (3) Declaratory

12   Relief for Violations of the ADA.

### III.    ANALYSIS

#### A.    Plaintiffs' ADA Claim Fails Because the Allegations Do Not Demonstrate They Were Denied Service "on the Basis of" Their Disability

16          Plaintiffs have not stated a claim under the ADA because their allegations do not establish

17   that their disability was the cause of their alleged inability to be served after the lobby closed. Title

18   III of the ADA provides prohibits discrimination "***on the basis of disability*** in the full and equal

19   enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

20   place of public accommodation…" 42 U.S.C. § 12182(a) (emphasis added.) "To prevail on a Title

21   III discrimination claim, the plaintiff must show that: (1) she is disabled within the meaning of the

22   ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public

23   accommodation; and (3) the plaintiff was denied public accommodations by the defendant ***because***

24   ***of*** her disability." *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 730 (9th Cir. 2007) (emphasis added.)

25   "Where a barrier affects both disabled and nondisabled patrons alike it is not an ADA violation."

26   *Ridola v. Muhammad*, No. 1:16-cv-01481-LJO-SAB, 2017 U.S. Dist. LEXIS 76071, at \*7 (E.D.

27   Cal. May 18, 2017). Where "disabled and non-disabled are treated alike … there is no disability

28   discrimination." *Louie v. Ideal Cleaners*, No. C 99-1557 CRB, C 99-1814 CRB, 1999 U.S. Dist.

-5-

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

1   LEXIS 19811, at \*3 (N.D. Cal. Dec. 14, 1999).  Here, the allegations show that Jack in the Box's

2   policy affects people based on, at most, their status as pedestrians, not on the basis of any disability.

3      Nearly identical facts were alleged and found insufficient in *Davis v. Wendy's Int'l, LLC,*

4   No. 1:19-CV-04003, 2019 U.S. Dist. LEXIS 214028 (N.D. Ill. Dec. 12, 2019). In *Davis,* the

5   plaintiff, as here, asserted that Wendy's drive through-only late night service discriminated against

6   her because she was visually impaired.  The court dismissed the complaint without leave to amend.

7      The court began its analysis by observing that the ADA prohibits discrimination "on the

8   basis of disability," which "requires [a plaintiff] to prove that 'but for' his disability, he would

9   have been able to access the services or benefits desired." (*Id.* at \*11-12 (citing *A.H. by*

10  *Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018).)[1] The court found her

11  allegations regarding causation lacking for two reasons. "First, Wendy's policy affects non-

12  disabled and disabled pedestrians identically. Second, [plaintiff] has failed to plead facts that

13  would lead to an inference that she would drive but for her visual impairment."  The complaint

14  here suffers from the same deficiencies.

15     As the court in *Davis* reasoned, Wendy's policy "to prohibit pedestrians from walking

16  through the drive-through affects all pedestrians, not just blind pedestrians." *Id.* at \*13. "The fact

17  that [plaintiff] does not have a chance to [access the services or benefits desired] does not establish

18  that the [defendant's policies] are the but-for cause of his failure to [access the services or benefits

19  desired]." *Id.* Plaintiffs' allegations here are the same: Jack in the Box-branded restaurants "refuse

20  service to any pedestrian who walks up to the drive-thru attempting to order food." (Dkt # 1, ¶ 33.)

21  The (alleged) policy affects *all* pedestrians, not just visually impaired pedestrians. It affects

22  disabled and non-disabled persons alike.

23     Like the plaintiff in *Davis,* Plaintiffs here were unable to be served because of something

---

24  [1] The Ninth Circuit likewise requires that the disability be the "sole" cause of injury. *See*

25  *Weinrich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir. 1997) (a
    "plaintiff proceeding under Title II of the ADA must … prove that the exclusion … was 'solely

26  by reason of disability.'") In *Weinrich,* the defendant transit agency required an updated
    certification of a rider's disability to qualify for its reduced fare program. Plaintiff asked for an

27  exemption because he could not afford a doctor, and the agency denied the request. The court
    found no violation of the ADA because plaintiff's inability to access the reduced fair program

28  was not due to his disability but instead was due to his financial condition. *Id.*

-6-

1   they share with nondisabled people – being a pedestrian – *not* because they are disabled. Plaintiffs

2   have not sufficiently alleged causation – that they were unable to be served "on the basis of" or

3   "because of" their alleged disability – because they were, by their own admission (Dkt # 1, ¶ 33),

4   restricted from using the drive-thru *not* because of their alleged disability, but instead because Jack

5   in the Box allegedly does not allow any pedestrians to use the drive-through.  Further, Plaintiffs –

6   just like anyone else that does not drive – can use the drive-through as a passenger in a friend's

7   car or taxi, or can obtain food through a delivery service.

8         The second reason the court in *Davis* dismissed the complaint before it was that the plaintiff

9   there, like Plaintiffs here, did not allege that she could and would drive if not for her disability.

10   *Davis, supra,* 2019 U.S. Dist. LEXIS 214028 at \*14. "Assuming [plaintiff] would pass a potential

11   vision screening but for her disability does not then allow us to plausibly infer that she would pass

12   both the written and driving exam." *Id.* "There are other reasons we cannot assume that [plaintiff]

13   could drive and access the drive-through even if she were not visually impaired. She may be unable

14   to afford a car, car insurance, or registration. She may have her driver's license suspended or

15   revoked. She may be under the influence of drugs or alcohol, or she may travel to the restaurant

16   on foot or on the bus." *Id.* at \*14-15. Here, there are no allegations that lead to an inference that

17   Plaintiffs could and would be able to operate a vehicle and use the drive-through were they not

18   visually impaired.

19         **B.**    **Plaintiffs' ADA Claim Fails Because Driving Is Not a Major Life Activity**

20         Plaintiffs have note alleged that they are disabled within the meaning of the ADA because

21   driving is not a major life activity.  They each allege that their "eyesight has been compromised"

22   and are "unable to legally operate a motor vehicle" as a result. (Dkt. #1, ¶¶ 10, 11.)  "[*D]riving* is

23   not a major life activity that would lead to a finding of disability." *Lacayo v. Donahoe*, No. 14-cv-

24   04077-JSC, 2015 U.S. Dist. LEXIS 80706, at \*32 (N.D. Cal. June 22, 2015)

25         In *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998), the

26   Supreme Court identified a three-step test to determine if a physical or mental condition meets

27   subsection A (limits a major life activity) of the definition of disability. First, a court must

28   determine whether the condition claimed was a physical or mental impairment. *Id*. Second, the

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

-7-

1    court "identifies the life activity upon which [plaintiff] relies . . . and determine[s] whether it

2    constitutes a major life activity under the ADA." *Id*. Third, the court determines whether the

3    impairment substantially limited this major life activity. *Id.*

4         The district court in another recent drive-through case recently concluded that "driving" is

5    not a major life activity, under the ADA ADA Amendments Act of 2008 (the "ADAAA"). *Morey*

6    *v. McDonald's Corp.*, No. 18 C 1137, 2020 U.S. Dist. LEXIS 87686, at *6 (N.D. Ill. May 19,

7    2020); *see also Lacayo, supra,* 2015 U.S. Dist. LEXIS 80706, at *32.

8         The Complaint makes it clear that, for the second *Bragdon* element, it is *not* "being able to

9    see" that is the major life activity that allegedly prevents Plaintiffs from obtaining night access to

10   a Jack in the Box, it is instead "not being able to drive." (Dkt. #1, ¶¶ 32, 33 [restaurant does not

11   permit pedestrians to order from drive-through].) That is, it is not the visual impairment that

12   prevents them from ordering from the drive-through (they could easily order food as a passenger)

13   it is instead ***driving*** that allegedly prevents them from doing so. As in *Morey* and *Lacayo*, driving

14   is *not* a major life activity. Plaintiffs accordingly fail to meet the *Bragdon* test and their ADA claim

15   fails.

16        **C.    Plaintiffs Do Not Allege Facts Demonstrating that Defendant Owns, Leases,
              or Operates the Particular Locations**

17

18        Title III of the ADA prohibits discrimination "by any person who owns, leases (or leases

19   to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Plaintiffs have not

20   alleged ***facts*** sufficient to show that Defendant is subject to Title III—that it "owns, leases . . ., or

21   operates a place of public accommodation." 42 U.S.C. § 12182(a).

22        Plaintiffs summarily allege that Defendant "owns, operates, and leases" *some unspecified*

23   restaurants, but do not allege that they own or lease the two restaurants visited by Plaintiffs.

24   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) ("a complaint must contain sufficient

25   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'".) Complaints

26   containing "mere conclusory statements" or "'naked assertion[s]' devoid of 'further factual

27   enhancement'" will not suffice. *Id.*

28        Plaintiffs unsuccessfully attempt to show that Defendant *operates* the restaurants at issue

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

-8-

**Gordon Rees Scully Mansukhani, LLP**
**3 Park Center Drive, Suite 200**
**Sacramento, CA 95825**

1    by virtue of the alleged "Jack in the Box System." (Dkt # 1, ¶¶ 15 – 24.) The Ninth Circuit has

2    interpreted the term "to operate" as "to put or keep in operation," "to control or direct the

3    functioning of," or "to conduct the affairs of; manage." *Lentini v. California Ctr. for the Arts,*

4    *Escondido,* 370 F.3d 837, 849 (9th Cir. 2004). Importantly, the Ninth Circuit relied on *Neff v. Am.*

5    *Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995), in defining the term "to operate." *Lentini*,

6    370 F.3d at 849 ("We agree with the Fifth Circuit's guidelines for defining the scope of the verb

7    "to operate" in this context."). In *Neff*, the Fifth Circuit held that the meaning of "operator" in the

8    context of franchising agreements turned on whether the franchisor "specifically control[ed] the

9    modification of the franchises to improve their accessibility to the disabled." *Neff*, 58 F.3d at 1066.

10   Based on this reasoning, the Fifth Circuit concluded that the franchisor in that case was ***not*** an

11   operator even though the franchising agreement gave it "the right to set standards for building and

12   equipment maintenance and to 'veto' proposed structural changes[.]" *Id*. at 1068.

13          Here, while Plaintiffs make several allegations about the "Jack in the Box System," (Dkt #

14   1, ¶¶ 15 – 24), none of them are sufficient to show that Jack in the Box "specifically controls" the

15   drive-through policy that is allegedly discriminatory. Plaintiffs allege that Jack in the Box dictates

16   the "hours that Jack in the Box restaurants will be open for business," (Dkt # 1, ¶ 23) but do ***not***

17   allege that Defendant, for example, requires any location to close its lobby and provide only drive-

18   through service late at night or at any other time. There is no allegation that Jack in the Box

19   restaurants are even required to have a drive-through. Plaintiffs do not allege Defendant's "Jack in

20   the Box System" prohibits franchisees from allowing pedestrians to use the drive-through.

21          In *Lemmons v. Ace Hardware Corp.*, No. 12-cv-03936-JST, 2014 U.S. Dist. LEXIS 91347,

22   at *21 (N.D. Cal. July 3, 2014), the court granted summary judgment in favor of franchisor where

23   there was "no evidence to show that Ace retained the authority under the agreement to dictate the

24   physical layout of the store, or … otherwise participated in the alleged acts of discrimination

25   against Plaintiff." Here, there are no allegations that Jack in the Box controls, specifically or

26   otherwise, the drive-through policy that is allegedly discriminatory. To the contrary, Plaintiffs

27   allege that Defendant does *not* have in place any policies regarding service of customers when "the

28   interiors of those restaurants are closed to the public but while the drive-thrus of those restaurants

-9-

Gordon Rees Scully Mansukhani, LLP
3 Park Center Drive, Suite 200
Sacramento, CA 95825

1   are still open to the public." (Dkt. #1, ¶ 24.) Plaintiffs have not alleged *facts* sufficient to establish

2   that Defendant owns, leases, or operates the restaurants they visited.

3          **D.      Plaintiffs' Unruh Claim Fails for the Same Reasons**

4          Plaintiffs' Unruh Act claim is premised entirely on the same facts as the ADA claim. (Dkt.

5   #1, ¶¶ 83-88.)  As shown above, Jack in the Box has not discriminated against Plaintiffs on the

6   basis of their disability for two reasons: First, the policy applies to all pedestrians; Second,

7   Plaintiffs have not alleged facts demonstrating Defendant's control over the allegedly

8   discriminatory policy. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th

9   Cir. 2004) ("the same standards for liability apply under both" the Unruh Act and the ADA).

10         Further, "[a] policy that is neutral on its face is not actionable under the Unruh Act, even

11  when it has a disproportionate impact on a protected class." *Turner v. Ass'n of Am. Med. Colls.*,

12  85 Cal. Rptr. 3d 94, 100 (2008); Cal. Civ. Code § 51(c) ["This section shall not be construed to

13  confer any right or privilege on a person that is conditioned or limited by law or that is applicable

14  alike to persons of every sex, color, race, religion, ancestry, national origin, disability …"]

15         According to Plaintiffs' allegations, the policies of the restaurants are applicable alike to

16  nondisabled and disabled individuals – *no* pedestrians are allowed through the drive-through. (Dkt

17  # 1, ¶¶ 32-33.) Plaintiffs have not alleged facts sufficient to state a cause of action under the Unruh

18  Civil Rights Act.

19         **E.      Plaintiffs Have Not Plead Facts That Would Entitle Them to Declaratory
                      Relief**

20

21         Plaintiffs' Third Cause of Action for Declaratory Relief is premised on the same set of facts

22  and upon alleged violations of the ADA. (Dkt # 1, ¶¶ 90-92.)  It fails for the same reasons set forth

23  above.

24                          **IV.      CONCLUSION**

25         Plaintiffs do not allege any facts that show they have been discriminated against "on the

26  basis of" or "because of" their disability. The allegedly discriminatory policy affects both disabled

27  and nondisabled patrons alike and does not violate the ADA. Plaintiffs also do not allege facts

28  sufficient to show that corporate Defendant "operates" the restaurants that allegedly discriminated

Defendant's Motion to Dismiss and Memorandum in Support                          3:20-cv-02953-SI

1   against them. Plaintiffs' Unruh cause of action and claim for declaratory relief are derivative and

2   fail for the same reasons. Defendant requests that the Complaint be dismissed in its entirety,

3   without leave to amend.

4                                   Respectfully submitted,

5   Dated: June 19, 2020                          GORDON REES SCULLY MANSUKHANI, LLP

6

7                                   By:   /s/  Mark S. Posard
                                          Mark S. Posard
                                          Scott M. McLeod
8                                         Attorney for Defendant
                                          JACK IN THE BOX, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
**3 Park Center Drive, Suite 200**
**Sacramento, CA 95825**

-11-