Roberto Luis Costales, Esq.   (*pro hac vice*)
William H. Beaumont, Esq.   (*pro hac vice*)
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000
Facsimile:  (504) 272-2956
rlc@beaumontcostales.com
whb@beaumontcostales.com

Glenn M. Goffin, SBN 153766
Attorney-at-Law
920 Beach Park Blvd #39
Foster City, California 94404
Telephone: (415) 845-8556
ggoffin@glenngoffinlaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JUDY SZWANEK and JAMES LOPEZ II, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JACK IN THE BOX, INC., DIFFERENT RULES, LLC, ARGO HOSPITALITY SERVICES, INC., and THREE POWERS FOODS, INC.,<br><br>Defendants. | Case No.: 3:20-cv-02953-SI<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>DEMAND FOR JURY TRIAL<br><br><u>CLASS ACTION</u> |

Plaintiffs Judy Szwanek and James Lopez II allege the following based upon personal knowledge and the investigation by their counsel. Plaintiffs further allege the following upon information and belief that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

**<u>NATURE OF THE ACTION</u>**

1. This class action seeks to put an end to systemic civil rights violations committed by Jack in the Box restaurants against visually-impaired people in the United States.  Jack in the Box denies the visually-impaired equal access to the goods and services that Jack in the Box

provides during "late-night" operating times at thousands of their restaurants throughout the United States.

2. In an effort to increase profits and make their products available to the public for longer periods of time, Jack in the Box restaurants offer "late-night" hours. During these late evening and early morning operating times, patrons are not allowed to physically enter Jack in the Box restaurants and must access Jack in the Box products and services via "drive-thru" windows. These drive-thrus are only accessible by motor vehicle and are the exclusive means by which a customer can independently purchase Jack in the Box products during late-night hours.

3. Despite being accessible to the general public, Jack in the Box drive-thrus lack any meaningful accommodation for visually-impaired individuals who are unable to operate motor vehicles. Since they are unable to drive, and because it is not safe for them to walk through the drive-thru, visually-impaired individuals are totally precluded from accessing Jack in the Box's products during late-night hours.

4. While Jack in the Box's sighted customers have the opportunity to independently browse, select, and pay for products at Jack in the Box's drive-thrus without the assistance of others, visually-impaired people must hope for a companion with a car or paid taxi services to assist them in selecting and purchasing Jack in the Box food.

5. By failing to make its restaurants accessible to Plaintiffs and class members, Jack in the Box is violating basic equal access requirements under federal law. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. This includes removing barriers to full integration, independent living, and equal opportunity for persons with disabilities,

including those barriers created by drive-thru restaurants and other public accommodations that are inaccessible to blind and visually impaired persons.

## JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1343 and 1367.

## VENUE

7. Venue is proper in the Northern District pursuant to 28 U.S.C. §§ 1391 (b)-(c).

8. Defendants own, operate, and lease restaurants in California, including in the Northern District of California. A substantial part of the acts and omissions giving rise to the claims asserted herein have occurred in the Northern District of California.

## INTRADISTRICT ASSIGNMENT

9. Plaintiff Szwanek resides in this Division. Upon information and belief, a substantial portion of the claims herein sued upon occurred in this Division.

## PARTIES

10. Plaintiff Judy Szwanek is a citizen and resident of El Sobrante, California. Plaintiff Szwanek's eyesight has been compromised by a damaged optic nerve and she is substantially limited in the major life activity of seeing. This condition renders her unable to legally operate a motor vehicle. She is a member of a protected class under the Americans with Disabilities Act.

11. Plaintiff James Lopez II is a citizen and resident of Montebello, California. Plaintiff Lopez's eyesight has been compromised by macular degeneration and he is substantially limited in the major life activity of seeing. This condition renders him unable to legally operate a motor vehicle. He is a member of a protected class under the Americans with Disabilities Act.

12. Jack in the Box, Inc. is a California-based, for-profit corporation that owns, operates and/or leases Jack in the Box restaurants at thousands of locations throughout the United States.

13. Different Rules LLC is a for-profit corporation that became a successor company to Jack in the Box, Inc on July 8, 2019. Jack in the Box, Inc. and Different Rules LLC both have the right to enforce franchise agreements relating to Jack in the Box restaurants. Jack in the Box, Inc. and Different Rules LLC are hereafter referred to as "JITB."

14. Argo Hospitality Services, Inc. is a California-based, for profit corporation that is the franchisee of the Jack in the Box restaurant located at 4080 San Pablo Dam Road in El Sobrante, California.

15. Three Powers Foods, Inc. is a California-based, for profit corporation that is the franchisee of the Jack in the Box restaurant located at 869 West Washington Boulevard in Montebello, California.

## FACTUAL ALLEGATIONS

16. JITB owns, operates and/or leases the well-known chain of restaurants known as "Jack in the Box" which includes over 2,200 locations in the United States.

17. Jack in the Box restaurants offer two kinds of service: lobby service and drive-thru service.

18. Lobby service is available to patrons who physically enter Jack in the Box restaurants. Patrons approach a sales counter and relay their orders to Jack in the Box representatives who process payment and serve food.

19. During periods of time when a Jack in the Box restaurant's interior is closed to the public, lobby service is not available to customers.

20. Jack in the Box restaurants also provide drive-thru service.

21. Drive-thru service is provided via specialized automobile driveway lanes which stretch around JITB's restaurants. To obtain drive-thru service, Jack in the Box customers maneuver their automobiles into the drive-thru lane and then relay their food order to a Jack in the Box representative via microphone. Customers then drive their car further along the lane and retrieve their food from a series of windows on the side of JITB's restaurants.

22. Jack in the Box's drive-thru lanes are not designed for pedestrian customers to purchase and receive food.

23. It is unsafe for pedestrian customers to purchase and receive food in Jack in the Box's drive-thru lanes.

24. Jack in the Box restaurants commonly offer drive-thru service to customers during periods of time when lobby service is not available. Typically those periods of time are during the late night and early morning.

25. Many Jack in the Box restaurants remain open late serving food only via the drive-thru. At these restaurants, like the ones encountered by Plaintiffs, late-night service is available exclusively through the drive-thru and customers are not permitted to physically enter to order food.

26. Because the blind are unable to drive or walk up to the drive-thru window, and because Jack in the Box interiors are closed during late-night operating times, the blind are totally barred from independently using or enjoying the goods and services provided by Jack in the Box late-night drive-thru restaurants.

27. There are a variety of modest accommodations that would allow blind people to access to Jack in the Box late-night restaurant services, such as: installing a walk-up window;

allowing blind customers to access the lobby; and establishing a phone number or other ordering system by which the blind can order food and have it delivered to them through the front door.

28. These modifications are within JITB's control because JITB dictates how Jack in the Box restaurants are constructed, modified, and maintained. JITB's authority is derived from the franchise agreements it executes with its franchisees, including the franchisee-defendants in this case.

29. These modifications are within JITB's control because JITB has the power to dictate the policies and procedures that Jack in the Box restaurants and restaurant staff are required to follow. JITB's authority is derived from the franchise agreements it executes with its franchisees, including the franchisee-defendants in this case.

30. Upon information and belief, Jack in the Box restaurants are built pursuant to one of three different prototype designs that JITB creates and modifies at will.

31. Upon information and belief, these prototype designs already include specifications for disabled accessibility such as accessible bathrooms and parking.

32. Upon information and belief, JITB periodically requires franchisees to undertake improvements and/or alterations to Jack in the Box restaurants that JITB deems necessary.

33. Franchisees are not permitted to make alternations to Jack in the Box restaurants unless specifically approved by JITB, even if those alterations are required by law.

34. JITB's franchise agreement requires franchisees to comply with certain standards and procedures relating to the sale and provision of food, protocol for servicing customers, and the overall operation of the restaurant.

35. JITB codifies these standards and procedures into business manuals.

36. Franchisees agree to accept and comply with any modifications, revisions, and additions made by JITB to its business manuals and JITB retains the right to freely make such changes.

37. Upon information and belief, the business manuals include protocols for serving and assisting disabled customers.

38. Upon information and belief, the business manuals include protocols relating to drive-thru access.

39. Pursuant to its business manuals and franchise agreements JITB has the authority to dictate the operating times of franchised restaurants.

40. Pursuant to its franchise agreements JITB has the authority to compel the franchisees to implement changes related to disability access, including the specific proposals outlined in Paragraph 27 herein.

41. If a Franchisee fails to maintain and operate JITB's restaurant in accordance with JITB's standards and specifications, JITB may terminate its franchise agreement and the franchisee must stop operating as a Jack in the Box restaurant.

**Plaintiff Szwanek's Experience**

42. Plaintiff Szwanek remains awake into the late evening on a regular basis and she periodically desires to obtain food from Jack in the Box restaurants during late evening hours.

43. In May of 2018 Plaintiff Szwanek wanted to obtain food from the Jack in the Box restaurant located at 4080 San Pablo Dam Road in El Sobrante, California.

44. Plaintiff Szwanek approached the restaurant and realized the lobby was closed.

45. Based on her personal experience living in the area, and also her contemporaneous observations at the restaurant, Plaintiff Szwanek was aware that the restaurant continued to serve customers through the drive-thru while the lobby service in the lobby remained closed.

46. Because Plaintiff Szwanek is blind and unable to lawfully operate a motor vehicle, she was unable to independently access the aforementioned Jack in the Box in her 2018 encounter.

47. Plaintiff Szwanek visits this particular Jack in the Box regularly throughout the year and she reasonably expects to visit there again in the future. This restaurant is approximately a 6-minute walk from Plaintiff's home.

48. Not only is the Jack in the Box restaurant in close vicinity to her home, it is also surrounded by other commercial establishments that Plaintiff Szwanek enjoys frequenting.

49. Plaintiff Szwanek has walked the distance between her home and the Jack in the Box before and reasonably anticipates doing so again.

50. Plaintiff Szwanek has felt and continues to feel disappointed and frustrated in connection with her inability to access Jack in the Box's services.

51. Because of her familiarity with Jack in the Box late-night policy, Plaintiff Szwanek sometimes avoids going to Jack in the Box during its late-night, drive-thru only hours.

52. Plaintiff Szwanek would visit again the Jack in the Box restaurant on San Pablo Dam Road during its late-night operating times if it were accessible to her.

53. Argo Hospitality Services, Inc. ("Argo") is the franchisee of the above-referenced Jack in the Box located on San Pablo Dam Road. Argo co-operates this restaurant location with JITB, managing the day-to-day administration of the restaurant.

54. Upon information and belief, JITB leases the 4080 San Pablo Dam Road restaurant building and premises from a third party.

55. JITB and Argo thus provides accommodations, advantages, facilities, privileges, and services to customers that contain access barriers. These barriers deny full and equal access to Plaintiff Szwanek, who would otherwise be able to fully and equally enjoy the benefits and services of Jack in the Box restaurants.

**Plaintiff Lopez's Experience**

56. Plaintiff Lopez remains awake into the late evening on a regular basis and he periodically desires to obtain food from Jack in the Box restaurants during these late evening hours.

57. In mid-2019 Plaintiff Lopez wanted to obtain food from the Jack in the Box restaurant located at 869 West Washington Boulevard in Montebello, California. This particular restaurant is approximately an 11-minute walk from the Plaintiff's home.

58. Plaintiff Lopez approached the restaurant and realized the lobby was closed.

59. Because Plaintiff Lopez is blind and unable to lawfully operate a motor vehicle, he was unable to independently access the West Washington Jack in the Box in his 2019 encounter.

60. Plaintiff Lopez visits this particular Jack in the Box regularly throughout the year and he reasonably expects to visit there again in the future.

61. Not only is the Jack in the Box restaurant in close vicinity to his home, it is also surrounded by other commercial establishments that Plaintiff Lopez enjoys frequenting.

62. Plaintiff Lopez has walked the distance between his home and the Jack in the Box before and reasonably anticipates doing so again.

63. Plaintiff Lopez has felt and continues to feel disappointed and frustrated in connection with his inability to access Jack in the Box's services.

64. Because of his familiarity with Jack in the Box late-night policy, Plaintiff Lopez sometimes avoids going to Jack in the Box during its late-night, drive-thru only hours.

65. Plaintiff Lopez would visit again the Jack in the Box restaurant on West Washington Boulevard during its late-night operating times if it were accessible to him.

66. Upon information and belief, JITB leases the 869 West Washington Boulevard's restaurant building and premises from a third party.

67. Defendant Three Powers Foods, Inc. is the franchisee of a Jack in the Box restaurant located at 869 West Washington Boulevard. Three Powers Foods, Inc. co-operates this restaurant location with JITB, managing the day-to-day administration of the restaurant.

68. JITB and Three Powers Foods, Inc thus provides accommodations, advantages, facilities, privileges, and services to customers that contain access barriers. These barriers deny full and equal access to Plaintiff Lopez, who would otherwise be able to fully and equally enjoy the benefits and services of Jack in the Box restaurants.

## CLASS ACTION ALLEGATIONS

69. With respect to Defendant JITB, Plaintiffs seek certification of the following Nationwide Class and California Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3):

**Nationwide Class**: "all individuals who are unable to drive by reason of visual disability and who have been and/or are being denied access to Jack in the Box restaurants in the United States where Jack in the Box restaurants' products and services are only offered via drive-thru."

**California Class:** "all individuals who are unable to drive by reason of visual disability and who have been and/or are being denied access or deterred from

**accessing Jack in the Box restaurants in California where Jack in the Box restaurants' products and services are only offered via drive-thru."**

70.   The persons in the Nationwide Class and California Class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

71.   This case arises out of JITB's common policy and practice of denying blind persons access to the goods and services of its restaurants. Due to JITB's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to Jack in the Box restaurants and the goods and services they offer.

72.   There are common questions of law and fact involved affecting the parties. The Plaintiffs and the putative class are all legally blind and have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, the accommodations, advantages, facilities, privileges, and services provided at JITB's restaurants due to the lack of accessible features at such facilities, as required by law.

73.   The claims of the named Plaintiffs are typical of those of the Nationwide Class and the California Class. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Nationwide Class and the California Class. Plaintiffs have retained and are represented by counsel competent and experienced in complex and class action litigation.

74.   Class certification of the Nationwide Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because JITB has acted or refused to act on grounds generally applicable to the Nationwide Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Nationwide Class as a whole.

75. Class certification of the California Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The common issues of law include: (1) whether the putative class members are individuals with disabilities within the meaning of the ADA and California law; (2) whether JITB denies and/or deters legally blind individuals in California from accessing its services during its "late-night" hours; (3) whether JITB violates Title III of the ADA; and (4) whether JITB has violated Cal. Civ. Code, § 51, *et seq.* ("the Unruh Act").

76. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Judicial economy will be served by maintaining this lawsuit as a class action because it avoids the burden which would otherwise be placed upon the judicial system by the filing of numerous similar suits. A class action is also superior because the damages suffered by individual class members are relatively small and because the burden upon such individual litigants may make it difficult and impractical for them to pursue their claims against JITB.

77. There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court.

78. References to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the class, unless otherwise indicated.

## FIRST CAUSE OF ACTION
**(Violation of 42 U.S.C. §§ 12181, *et seq.* - Title III of the Americans with Disabilities Act)**
**(on behalf of Plaintiffs and the Nationwide Class)**

79. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

80. Section 12182(a) of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, (hereinafter "ADA") provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

81. Defendants' restaurants are restaurants, and, therefore places of public accommodation with the definition of Title III of the ADA. 42 U.S.C. §12181(7)(B)

82. Defendants' restaurants are sales establishments, and, therefore places of public accommodation with the definition of Title III of the ADA. 42 U.S.C. §12181(7)(E)

83. Defendants' restaurants are places of "public accommodation" that are subject to compliance under the ADA.

84. Under Section 12182(a) and (b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

85. Under Section 12182(a) and (b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, which is unequal, different, or separate to the opportunities afforded to other individuals.

86.     Under Section 12182(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: (1) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; (2) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden; and (3) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities where such removal is readily achievable.

87.     Patrons of Defendants' restaurants who are blind (including Plaintiffs and the proposed classes) have been denied full and equal access to those public accommodations; and they have not been provided services that are provided to other patrons who are not disabled and/or they have been provided services that are inferior to the services provided to non-disabled patrons. Defendants has failed to take any steps to remedy its discriminatory conduct. These violations are ongoing. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and members of the proposed classes will continue to suffer irreparable harm.

88.     Defendants are more than capable of adapting their policies and practices to accommodate the blind and the complaints made herein. However, Defendants choose not to

allow their late-night drive-thru restaurants to be made independently usable by customers who are blind or have low vision. Consequently, Defendants must furnish auxiliary aids or services, modify their policies and procedures, or make the necessary architectural changes to enable blind individuals to equally and independently benefit from Defendants services unless doing so would result in a fundamental alteration or undue burden.

89. The acts alleged herein constitute violations of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, and the regulations promulgated thereunder.

90. The actions of Defendants were and are in violation of the Americans with Disabilities Act 42 U.S.C. §§ 12181, *et seq.*, and therefore Plaintiffs are entitled to injunctive relief to remedy the discrimination as well as attorney's fees.

**SECOND CAUSE OF ACTION**
**(Unruh Civil Rights Act)**
**(on behalf of Plaintiffs and the California Class)**

91. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

92. Defendants operate business establishments within the jurisdiction of the State of California and, as such, is obligated to comply with the provisions of the Unruh Act, Cal. Civ. Code, §§ 51, *et seq.* ("the Unruh Act").

93. The conduct alleged herein violates the Unruh Act, including Cal. Civ. Code, §§ 51, *et seq.*

94. The Unruh Act guarantees, *inter alia*, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act.

95. JITB has and continues to violate the Unruh Act by, *inter alia*, denying Plaintiffs and members of the proposed California Class, as persons with disabilities, full and equal accommodations, advantages, facilities, privileges, or services offered by JITB. JITB has also violated the Unruh Act by violating the ADA, as set forth above.

96. JITB has and continues to violate the Unruh Act by, *inter alia*, failing to operate its services on a nondiscriminatory basis and failing to ensure that persons with disabilities have nondiscriminatory access to its restaurants.

97. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiffs pray for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(Declaratory Relief)**
**(on behalf of Plaintiffs and the Nationwide Class)**

98. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

99. An actual controversy has arisen and now exists between the parties in that Plaintiffs contends, and that JITB denies, that JITB, by providing inaccessible restaurants throughout the United States, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*.

100. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiffs respectfully request:

1. A permanent injunction to prohibit Defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*.;

2. A permanent injunction requiring Defendants to take the necessary steps to make their late-night drive-thru restaurants in the United States readily accessible and usable by blind and visually impaired individuals;

3. A declaration that Defendants are owning, leasing and/or operating its restaurants in a manner which discriminates against the blind and visually impaired and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*.

4. That this Court certify the Nationwide Class as identified herein and appoint Plaintiffs as class representatives and their attorneys as class counsel;

5. That this Court certify the California Class as identified herein and appoint Plaintiffs as class representatives and their attorneys as class counsel;

6. That this Court award actual, compensatory, and/or statutory damages to Plaintiffs and the putative class for violations of their respective civil rights under California law.

7. That this Court award Plaintiffs their reasonable attorney's fees and costs pursuant to federal and California law.

8. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand trial by jury on all issues for which a jury trial is allowed.

***Respectfully submitted,***

Dated: July 6, 2020

<u>*/s/ William H. Beaumont*</u>
Roberto Luis Costales  (*pro hac vice*)
William H. Beaumont  (*pro hac vice*)
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000
Facsimile:  (504) 272-2956
rlc@beaumontcostales.com
whb@beaumontcostales.com

*Attorneys for Plaintiffs*